## Westinghouse Electric Supply Co. v. United Electrical, etc., Workers of America et al.

*Maurice Bower Saul*, for plaintiff.
*Saul C. Waldbaum*, for defendants.

MILNER and MAWHINNEY, JJ., February 18, 1946.—
Plaintiff, Westinghouse Electric Supply Company, has filed in this court, sitting in Chancery, a bill of complaint asking for an injunction preliminary until final hearing and perpetual thereafter, restraining defendants and each of them, and the officers, organizers, representatives, agents and members of defendant unions and all persons acting in concert with them, or under their direction from:

(*a*) "In any manner interfering with, hindering or obstructing the conduct and operation of plaintiff's business.

(*b*) "Preventing or attempting to prevent by any type of intimidation, threats, force or coercion or turn-

ing against his will any of plaintiff's officers, agents, employes, representatives and others having business with said plaintiff from freely entering, leaving and transacting business on the plaintiff's premises.

(e) "Picketing other than peacefully and from interfering, hindering or obstructing in any manner the ingress to and egress from plaintiff's premises of plaintiff's officers, agents, employes, representatives and others having business with plaintiff, including the delivery, unloading and dispatch of merchandise to and from plaintiff's premises, and specifically:

(1) "From having in front of or in close proximity to the entrances of plaintiff's premises known as the Wesco Building, 141 North Eleventh Street, Philadelphia, or 2532 North Broad Street, Philadelphia, more than six pickets at any one time; that such pickets be in motion and spaced not less than 10 paces apart in a single line so as not to block any of the said entrances for the ingress and egress on foot or by vehicle of any person or persons desiring to enter or leave plaintiff's premises or to deliver goods thereto or dispatch goods therefrom;

(2) "From conducting mass picketing by the assembling, collecting, crowding and massing of pickets at any of the entrances to plaintiff's said premises in such manner as to block entry and prevent the employes of plaintiff and other persons having business with plaintiff from entering or leaving said premises.

(d) "In any manner conspiring, combining, confederating, agreeing and arranging with each other or with any other person or persons, organizations or associations to interfere with or injure plaintiff in the conduct of its lawful operations or to interfere with, hinder or annoy any person or employe of plaintiff who may desire to enter or leave the premises of plaintiff in the performance of his lawful work, assignments or for any other lawful purpose by force or displays of force or numbers, by threats, by acts of intimidation or

violence, by the use of epithets, jeers, suggestions of danger or taunts or by any other conduct which tends to deprive any such employe or other person of the free enjoyment of his legal rights of access to and from plaintiff's properties.

(e) "Loitering or being unnecessarily in the vicinity of the points or places of ingress and egress of plaintiff's premises in Philadelphia County.

(f) "In any manner performing any of the acts aforesaid so as to induce others to fail to provide or assist in providing goods, services, transportation and supplies to plaintiff and plaintiff's premises."

Plaintiff in its bill of complaint alleges that by reason of the "unlawful acts" of defendants "plaintiff has suffered and will continue to suffer immediate and irreparable injuries, loss and damage to its business unless a temporary injunction is issued in this case." The bill is accompanied by five injunction affidavits. Upon plaintiff's application for a preliminary injunction hearings were held before Judges Milner and Mawhinney, sitting en banc, on February 13, 14 and 15, 1946, at which times witnesses produced by both plaintiff and defendants were heard. At the conclusion of the hearing defendants' motion to dismiss the bill of complaint in regard to the United Electrical, Radio and Machine Workers of America (C. I. O.) Local 111 and its officers and defendants, Francis White and Harry Block, was granted, leaving the United Electrical, Radio and Machine Workers of America (C. I. O.), Local 107, and its officers named in the bill of complaint as defendants.

From the averments in the pleadings which were admitted by defendants and the evidence adduced at the hearing we make the following

*Findings of fact*

1. Plaintiff is a corporation duly organized and existing under the laws of the State of Delaware, duly

registered to do business and actually doing business in the Commonwealth of Pennsylvania.

2. Plaintiff is a wholly owned subsidiary of the Westinghouse Electric Corporation, a Pennsylvania corporation. The business of plaintiff is the sale and distribution of electrical supplies and apparatus manufactured by Westinghouse Electric Corporation and also by other companies not affiliated in any way with Westinghouse Electric Corporation. Plaintiff does no manufacturing whatsoever.

3. Defendant, United Electrical, Radio and Machine Workers of America (C. I. O.), Local 107 (hereinafter referred to as "Local 107"), is a voluntary unincorporated association and is a local union of the parent body, United Electrical, Radio and Machine Workers of America, an international union affiliated with, and a member of, the Congress of Industrial Organizations.

Individual defendants are John Schaefer, president of Local 107; Lewis Wells, vice-president of Local 107; James Price, business representative of Local 107; G. Boyd Kline, financial secretary of Local 107; John W. Harrington, treasurer of Local 107; George Yaunches, recording secretary of Local 107; William DeFries, Walter Galvin and Howard Shay, trustees of Local 107; James Allford, guide of Local 107; Joseph Henney, a guard of Local 107; Jack Sablich, a member of the general committee of Local 107; William Mayne, a member of the general committee of Local 107; Joseph Brennan, a member of the general committee of Local 107; Chas. H. Myers, John A. Flynn, Edwin M. Burns, Jr., Norman Weaver, Clarence Felker, John Acker, Roy Hutchins, Adam Polak, Lex Neff, William English, chief shop stewards of Local 107. The foregoing individual defendants are named as defendants individually and as members, representatives or officers of Local 107 and are fairly representative of Local 107 and all of its members.

4. Plaintiff owns in the City of Philadelphia an office building and warehouse containing six stories and a basement at 141 North Eleventh Street, containing approximately 85,000 square feet, known as the "Wesco Building". This building, located on the southeast corner of Eleventh and Race Streets, contains in front on Eleventh Street 151 feet 8 inches, and in depth along Race Street 98 feet.

5. In the conduct of its business plaintiff uses all of the Wesco Building above mentioned with the exception of the third and sixth floors, and in addition plaintiff rents and uses in its business a two-story-and-basement brick building at 2532 North Broad Street. The entire third floor of the Wesco Building is rented by plaintiff to the Brooks Company, printers, which has approximately 50 employes. The entire sixth floor of the Wesco Building is rented by plaintiff to the Real Sport Clothing Company, manufacturers of clothing, which has approximately 40 to 50 employes.

6. The delivery service of plaintiff is maintained under a contract with B. Clayman & Sons, Tenth and Vine Streets, Philadelphia, who furnish the trucks and the drivers. The drivers are members of the Teamsters' Union, Local 107, of the American Federation of Labor.

The Wesco Building at 141 North Eleventh Street, Philadelphia, is serviced by the real estate agents, Joseph J. & Reynold H. Greenberg, Inc., who employ four persons for the operation of the elevators and for the maintenance of the building.

7. On January 15, 1946, defendant union, United Electrical, Radio and Machine Workers of America (C. I. O.), Local 107, called and instituted a strike at the Westinghouse Electric Corporation's plant at Lester, Delaware County, Pennsylvania, known as the South Philadelphia plant, and said defendant union, Local 107, and the members thereof, including individual defendants, ceased work at the South Philadel-

phia plant and went on strike, and the said strike still continues.

8. Plaintiff has no connection with defendant unions or any of their members, or with their parent or affiliated organizations, and the employes of plaintiff are willing and anxious to work for plaintiff. No labor dispute or controversy of any kind exists between plaintiff and its employes.

9. Defendant union, Local 107, and defendants individually and as representatives of the said union and their fellow members have caused to assemble around and about the entrances to the said Wesco Building, plaintiff's place of business and warehouse, large groups of men so congregated as to prevent the orderly and free entrance of the plaintiff's officers, employes and other persons having lawful business on plaintiff's premises.

10. Said defendants, their servants, agents and other persons, acting on behalf of them, including members of said defendant union, Local 107, are engaged in mass picketing around and about the entrances to said Wesco Building occupied by plaintiff and upon the private driveway on the premises of plaintiff leading to its receiving department for incoming shipments.

11. By their large numbers members of defendant union are coercing and intimidating officers of the plaintiff company and its employes having lawful business upon the plaintiff's premises from entering or leaving the said premises.

12. Although defendants caused plaintiff's premises to be picketed by a small number of pickets from January 16, 1946, to January 21, 1946, the mass picketing referred to above began on January 28, 1946, and has continued every working day until the dates of the hearings.

13. From January 28, 1946, to and inclusive of the dates of the hearings in this matter, plaintiff's em-

ployes have been barred and denied access to the said Wesco Building by a group of pickets, none of whom are employes of plaintiff, acting under the instructions and on behalf of defendants. In general the method employed by the pickets has been for them to assemble in large numbers, ranging from approximately 25 to 150 at the employes' entrance and the shipping department driveway entrance on Eleventh Street, and in large numbers at the receiving entrance on Race Street, and by mass picketing completely blocking the said entrances and rendering it physically impossible for anyone to pass through. These pickets walk or shuffle close together, and generally back to chest, in an elliptical formation having the effect of a double line close to plaintiff's building, and in some instances have cursed the employes who asked for permission to enter their place of employment, and called them by such epithets as "God damn scab" and "son of a bitch". The pickets wear buttons and in some instances carry placards and wear arm bands indicating that they are members of said defendant union, Local 107, and are on strike.

14. None of the officers of plaintiff company or its employes have been allowed by said pickets to enter the Wesco Building except by application to officers of defendant union or its international affiliate, and since about January 29, 1946, this permission has only been granted to certain managerial personnel, about seven in number. On one or two occasions certain of the employes obtained entrance to the said building with the aid of the police, but the police on at least one occasion refused to aid an employe in entering the building, and other employes have refrained from seeking police assistance in order to gain entrance because of the possibility of violence ensuing.

15. From January 21, 1946, up to the present time plaintiff has been unable to make deliveries or receive shipments by truck through its shipping department driveway.

16. At about 12:30 p.m. on January 29, 1946, there was broadcast over a public address truck at the Essington gate of the South Philadelphia plant of the Westinghouse Electric Corporation at Lester, Delaware County, Pennsylvania, where picketing was in progress, a message to the striking members of the union at that plant directing those living in Philadelphia to appear at Eleventh and Race Streets, Philadelphia, for mass picketing of the Wesco Building on the morning of Wednesday, January 30, 1946.

17. In addition to the cost of plaintiff's investment in the Wesco Building itself, plaintiff's inventories of goods owned by or consigned to plaintiff and presently in the Wesco Building, total approximately $350,000, of which less than one half are products manufactured by Westinghouse Electric Corporation, the remainder being products of other companies. Plaintiff's normal payroll covering base pay only of employes at the Wesco Building is over $23,000 per month and plaintiff's overall operating expenses at said building are approximately $32,500 per month.

18. Having been deprived of the use of its warehouse in the Wesco Building by the above described mass picketing activities of defendants, their employes, agents and others acting under their instructions or on their behalf, plaintiff has been obliged to store in a public warehouse goods shipped to plaintiff which could not be taken through the picket lines and to the warehouse through plaintiff's receiving entrance on Race Street; and additional goods shipped to plaintiff are arriving from time to time and must likewise be stored in a public warehouse. Thus plaintiff not only is incurring the expense of such storage in a public warehouse but also will incur in the future additional expenses of moving such goods from the public warehouse to plaintiff's building at 141 North Eleventh Street.

19. As a result of the said picketing activities the normal course of plaintiff's business has come to a standstill and cannot be restored during the continuation of such picketing. Plaintiff has been unable to fill existing obligations with respect to the furnishing of electrical apparatus, supplies, and appliances. Plaintiff has been unable to maintain the normal accounting and statistical operations necessary for the conduct of plaintiff's extensive business.

20. Because of the aforesaid acts of defendants plaintiff has suffered and will continue to suffer immediate and irreparable injury, loss and damage to its business and property.

## Discussion

The evidence adduced in this case shows conclusively that defendants are by illegal mass picketing forcibly denying to plaintiff and its officers, agents and employes, access to its property for the purpose of protecting and maintaining it and its equipment, and for carrying on its business and other legitimate purposes, and the acts of defendants are in practical and legal effect a seizure or holding of plaintiff's property, which a court of equity has the power and the duty to enjoin: Carnegie-Illinois Steel Corporation v. United Steel Workers of America et al., 353 Pa. 420.

The pickets in this case are deployed about the comparatively narrow entrances to plaintiff's premises in large numbers and they march or walk in an elliptical formation having the effect of a double line, so close together that they not only physically and completely block the means of ingress and egress from plaintiff's building, but by their mere numbers intimidate the officers and employes who have no labor dispute with plaintiff and desire to pursue their work, and effectively bar them and others having legitimate dealings with plaintiff from plaintiff's premises.

As stated by the court in Individual Retail Food Store Owners Assn. v. Penn Treaty Food Stores Assn. et al., 33 D. & C. 100, at page 111:

"The number of pickets at each store must not be excessive, for numbers may intimidate as easily as actions: American Foundries v. Tri-City Central Trades Council et al., supra [257 U.S. 184 (1921)], Jefferson & Indiana Coal Co. v. Marks et al., 287 Pa. 171 (1926)."

In Jefferson & Indiana Coal Co. v. Marks et al., 287 Pa. 171, Mr. Justice Kephart said at page 176:

"Such acts as hostile assemblages, marches, parades or acts of individuals, separately, collectively in combinations, or under a system, which annoy or embarrass, intimidate or terrify those who desire to work, have more potency over men of ordinary nerve than actual violence, and are unlawful: O'Neil v. Behanna, 182 Pa. 236. A court of equity will intervene to protect persons and property by restraining such acts, threatened, done or likely to be done."

Peaceful picketing is the undoubted right of all labor unions as a form of free speech and assemblage. But the right to picket does not justify the use of mass picketing to prevent access to a place of business by those willing to cross the picket lines. Such picketing whether it be by 25 or 100 pickets is not peaceful or legal picketing. Picketing is not peaceful when a large crowd gathers in mass formation and denies to those who desire to cross the picket lines the right to do so, and accompanies the denial with hostile remarks and epithets.

In SKF Industries, Inc., v. Local No. 2898, United Steel Workers of America, C. I. O. (Court of Common Pleas No. 5, 56 D. & C. 149), President Judge Smith said:

"Assuming the lawfulness of picketing, it is conceded practically everywhere that it is permissible to maintain a reasonable number of pickets about the

plant of the employer. But the mere number of pickets may in itself constitute intimidation although no acts of violence are committed. Where a large number of pickets are so disposed as to constitute a show of force or any act of intimidation, an injunction to restrain such acts should and will be granted. In this case the evidence shows that by the great group congregating around and about the gates of the plaintiff's plant, there constitutes a show of force which intimidates and coerces the employes of the plaintiff and its officers, agents and representatives."

Not only has plaintiff been deprived of the use of its property by the actions of the defendants, but its right to carry on business, which is a valuable right of property, has been intentionally impaired by them: See Individual Retail Food Store Owners Assn. v. Penn Treaty Food Stores Assn. et al., 33 D. & C. 100, supra.

The actions of defendants in depriving plaintiff of the free use of its property constitutes in legal effect a seizure or holding of its property. Our Supreme Court in Carnegie-Illinois Steel Corp. v. United Steel Workers of America, supra, recently stated: "Such a lawless seizure of property no government worthy of the name will tolerate or condone." And in the minority opinion filed by Mr. Justice Jones in the same case he acquiesced in the view of the majority of the court, that mass picketing which denies to an owner free access to his property amounts to an unlawful seizure of the property and is unlawful, saying:

"Picketing to be lawful must be peaceful. Where picketing consists of people massed about a plant or its entrance gates with the compactness of a Macedonian phalanx, the fact that the picketing remains peaceful may be so only because no one can with safety attempt to go through the line. In such circumstances, it could hardly be thought a violent legal conclusion to hold that the plant had been seized and was being held against the owner's right to it."

## Conclusions of law

1. Picketing which results in the intimidation and coercion of officers and employes of plaintiff, and denies its officers, employes, agents and workmen legitimate access to its property and place of business is not legal picketing.

2. Picketing which consists of large numbers of pickets massed and grouped together at the entrances to a place of business for the purpose of denying the right of access is not legal picketing.

3. The mass picketing by defendants in this case has resulted in the coercion of its officers and employes and denies to plaintiff, its officers and employes, access to the use of its property for legitimate purposes and constitutes an unlawful seizure and holding of plaintiff's property and business, and is illegal.

4. Where picketing consists of people massed about the entrances to a plant or place of business with compactness so that no one with safety can attempt to go through the picket lines, it constitutes an illegal seizure and holding of the said plant or place of business, and is illegal.

5. Defendants and each of them are committing unlawful acts when they interfere with, hinder or obstruct the officers, employes or duly authorized agents of the plaintiff, in free, uninterrupted and unhindered access to its offices and warehouse owned or occupied by it in the City of Philadelphia, Commonwealth of Pennsylvania.

6. It is illegal for defendants, either singly or in combination with others, to collect, congregate, loiter or gather about plaintiff's premises, places of ingress to or egress from said premises, or any of the ways or approaches to the said premises or upon the said premises, for the purpose of unlawfully intimidating any of plaintiff's officers, employes, agents, or other persons, transacting business with the plaintiff, or for the pur-

pose of preventing free access to the property owned or occupied by plaintiff in the City of Philadelphia, Commonwealth of Pennsylvania, or by any of its officers, employes, agents or other persons having business to do with said plaintiff.

7. The courts of equity of the Commonwealth of Pennsylvania have jurisdiction to restrain the illegal picketing in this case, which has resulted in the denial to plaintiff, its officers, employes, agents and persons having business transactions with it, the right of access to its property and which by mere force of numbers or otherwise, coerces, intimidates, hinders or interferes with the right of its officers, employes, agents and persons having legitimate transaction with it, to freely enter or leave plaintiff's property and place of business.

8. Plaintiff is suffering immediate and irreparable loss, damage and injury and is threatened with and will continue to suffer irreparable loss, damage and injury unless equitable relief is granted.

9. Plaintiff does not have an adequate remedy at law.

### Decree awarding preliminary injunction

And now, to wit, February 18, 1946, the bill of complaint of the Westinghouse Electric Supply Company having been presented and considered, and the hearing having been held after due notice, it appearing to the Court that immediate and irreparable damage will result to plaintiff before final hearing can be had upon the merits of plaintiff's bill of complaint, it is ordered, adjudged and decreed that a preliminary injunction now issue, strictly enjoining and restraining following defendants named in the bill of complaint, viz: United Electrical, Radio and Machine Workers of America (C. I. O.), Local 107; John Schaefer, president of Local 107; Lewis Wells, vice president of Local 107; James Price, business representative of Local 107; G. Boyd Kline, financial secretary of Local 107; John W. Harrington, treasurer of Local 107;

George Yaunches, recording secretary of Local 107; William DeFries, Walter Galvin and Howard Shay, trustees of Local 107; James Allford, guide of Local 107; Joseph Henney, guard of Local 107; Jack Sablich, member of general committee of Local 107; William Mayne, member of general committee of Local 107; Joseph Brennan, member of general committee of Local 107; Charles R. Myers, John A. Flynn, Edwin M. Burns, Jr., Norman Weaver, Clarence Felker, John Acker, Roy Hutchins, Adam Polak, Lex Neff, William English, chief shop stewards of Local 107, as well as all other persons acting in concert with them, under their instructions or on their behalf, from:

(a) In any manner interfering with, hindering or obstructing the conduct and operation of plaintiff's business.

(b) Preventing or attempting to prevent by any type of intimidation, threats, force or coercion or turning against his will any of plaintiff's officers, agents, employes, representatives and others having business with said plaintiff from freely entering, leaving and transacting business on plaintiff's premises.

(c) Picketing other than peacefully and from interfering, hindering or obstructing in any manner the ingress to, and egress from, plaintiff's premises of plaintiff's officers, agents, employes, representatives and others having business with plaintiff, including the delivery, unloading and dispatch of merchandise to and from plaintiff's premises, and specifically:

(1) From having, in front of, or in close proximity to, any of the entrances of plaintiff's premises known as the Wesco Building, 141 North Eleventh Street, Philadelphia, or 2532 North Broad Street, Philadelphia, more than 10 pickets at any one entrance at any one time; that such pickets be in motion and spaced not less than 10 feet apart in a single line so as not to block any of the said entrances for the ingress and egress on foot or by vehicle of any person or persons

desiring to enter or leave plaintiff's premises or to deliver goods thereto or dispatch goods therefrom;

(2) From conducting mass picketing by the assembling, collecting, crowding and massing of pickets at any of the entrances to plaintiff's said premises in such manner as to block and prevent the employes of plaintiff and other persons having business with plaintiff from entering or leaving said premises.

(d) In any manner, conspiring, combining, confederating, agreeing and arranging with each other or with any other person or persons, organizations or associations to interfere with or injure plaintiff in the conduct of its lawful operations or to interfere with, hinder or annoy any person or employe of the plaintiff who may desire to enter or leave the premises of plaintiff in the performance of his lawful work assignments or for any other lawful purpose by force or displays of force or numbers, by threats, by acts of intimidation or violence, by the use of epithets, jeers, suggestions of danger or taunts, or by any other conduct which tends to deprive any such employe or other person of the free enjoyment of his legal rights of access to and from plaintiff's properties.

(e) Loitering or being unnecessarily in the vicinity of the points or places of ingress and egress of plaintiff's premises in Philadelphia County.

(f) In any manner performing any of the acts aforesaid so as to induce others to fail to provide or assist in providing goods, services, transportation and supplies to plaintiff and plaintiff's premises.

(g) Causing the pickets to carry signs or banners indicating that the employes of plaintiff in the Wesco Building are on strike.

(3) This injunction shall not be construed to restrain the right of any person or persons to terminate any relation of employment or to cease to perform any work or labor, or to peaceably and without threats and

intimidation·recommend, advise and persuade others so to do, in conformance with this decree.

This injunction shall continue until final hearing or until further order of this court.

Security to be entered by plaintiff in the sum of $5,000.